3:11-CV-1218-J-34JRK

IN THE FOURTH JUDICIAL CIRCUIT
COURT, IN AND FOR DUVAL COUNTY,
FLORIDA

CIVIL DIVISION

16- 2010-CA-0 1 4 7 6 9

FANESSA J. FULLER,

      Plaintiff,

## DIVISION CV-H

vs.

CASE NO: _____

LENDER PROCESSING
SERVICES, INC.,

      Defendant.

_____ /

FILED
ON COMPUTER
A. E.

**FILED**

DEC 14 2010

CLERK CIRCUIT COURT

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, FANESSA J. FULLER, an individual (hereinafter "Plaintiff" or "Fuller"), sues

the Defendant, LENDER PROCESSING SERVICES, INC., a corporation (hereinafter

"Defendant" or "LPS"), and alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action for handicap discrimination and retaliation in violation of the

Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"), for damages in excess of

$15,000.00.

2.     Plaintiff is a resident of Duval County, Florida.

3.     Defendant, LPS, is a corporation authorized to transact business in Florida,

incorporated under the laws of Delaware, with its principal place of business in Jacksonville,

Duval County, Florida.

4.     The causes of action alleged herein arose out of Plaintiff's employment by

Defendant in Duval County, Florida.

## FACTUAL ALLEGATIONS

5.      Fuller suffers from a disability in the form of Systematic Lupus Erythematous ("SLE"), a chronic, inflammatory autoimmune disease, the severity of which depends on whether the disease is in a more active stage called a lupus "flare."

6.      During a flare, Fuller suffers from, and must obtain medical treatment for, severe nausea and vomiting, skin bruising, extreme fatigue, cognitive/memory problems, difficulty walking and standing due to severe bone, back and joint pain, photosensitivity to fluorescent lighting, and chest pain due to recurring pericarditis, an inflammation of the lining surrounding her heart.

7.      In July 2000, Fuller began her employment with ApSoft Technologies ("ApSoft") in Atlanta, Georgia, implementing and servicing "NewInvoice" (subsequently renamed "Invoice Management"), computer software utilized by the financial industry in the foreclosure process.

8.      Defendant, LPS, is in the business of providing information technology and services to the financial industry.

9.      In or about 2003, Fidelity National Financial, a national title company, acquired LPS and other entities, relocated its corporate headquarters to Jacksonville, Florida, and subsequently renamed the company Fidelity National Information Services, Inc. ("FIS").

10.     In or about 2002/2003, FIS/LPS acquired "Invoice Management" from ApSoft and hired Fuller as a full-time employee based in Atlanta to continue implementing and servicing the software for FIS/LPS' clients.

11.    At all times material, Fuller's job performance was good, and her good performance caused FIS/LPS to promote her to the position of Assistant Vice President of Implementation in 2004.

12.    In 2004, Fuller informed her manager at the time, Laura Hadley, that she suffered from SLE.

13.    From 2004 to 2006, Ms. Hadley permitted Fuller to work at home "as needed" depending on her health due to SLE, during which time Fuller continued to satisfactorily perform her job duties.

14.    In 2006, Defendant agreed to permit Fuller to work at home (hereinafter "WAH") on a permanent basis as a reasonable accommodation due to her health.

15.    Since Fuller could perform her principal job duties, namely implementing and serving Invoice Management software, from any physical location as long as she had a computer connection, Fuller's position was ideally suited for permanent WAH status.

16.    LPS permitted Fuller to remain on permanent WAH status for almost three years, from April 2006 until December 2008.

17.    While on permanent WAH status from April 2006 until December 2008, Fuller received excellent performance reviews, had no disciplinary issues, and satisfactorily performed all of her job duties, including visiting the offices of FIS/LPS' clients when necessary.

18.    In 2008, LPS was spun off from FIS as an independent, publicly-traded corporation and Fuller continued her employment with LPS, implementing and servicing Invoice Management software.

3

19.     In March 2009, LPS transferred Fuller to its Jacksonville, Florida office, due to what LPS' representatives alleged were "business reasons."

20.     Upon transferring Fuller, Defendant removed Fuller's accommodations in the form of permanent WAH status.

21.     Defendant also denied or inordinately delayed providing other accommodations Fuller requested, including permission to work at home "as needed" ; a flexible work schedule; the flexible use of leave time; filters on the fluorescent lighting in her work area; and a handicapped parking space.

22.     Defendant also failed to engage in an interactive process with Fuller to determine a feasible replacement for permanent WAH status and the other accommodations Fuller had requested in order to perform her essential job duties.

23.     Despite the difficulty Plaintiff had in obtaining reasonable accommodations, on March 31, 2009, Fuller's supervisors gave her an excellent performance evaluation, rating her performance as "meets" or "above" expectations on every aspect of her job performance.

24.     In June 2009, Fuller's supervisors demoted her from the position of Assistant Vice President of Implementation, a position she had successfully held for five years, to the position of Manager of Implementation, but Fuller's duties did not change in any respect.

25.     The documentation notifying Fuller of the demotion stated that the purpose of the demotion was to "align your performance with your current job functions and responsibilities," not due to poor performance or as disciplinary action, and Fuller continued her good job performance.

4

26.   At that time, Fuller's supervisors informally told her that one of the reasons she was being demoted was because she could not physically visit the offices of LPS' clients.

27.   Since Plaintiff had always visited LPS' clients when necessary, Fuller understood this to mean that her supervisors did not like her wearing a hat or using a walking cane[1] when visiting clients' offices.

28.   Defendant also refused to permit Fuller to work at home while she was ill or at any other time, while permitting other, non-disabled employees, including other computer professionals, to work at home permanently, as needed, or when ill.

29.   On October 8, 2009, Fuller formally complained about LPS' failure to provide her with reasonable accommodations through her counsel, who sent a letter to Defendant placing it on notice that it was violating Fuller's rights.

30.   Shortly after LPS received the October 8, 2009 letter of Fuller's counsel, Defendant began finding unjustified fault with Fuller's performance and taking unwarranted disciplinary action against her.

31.   On October 21, 2009, less than two weeks after Plaintiff's counsel placed LPS on notice, Fuller's supervisors issued a "Notice of Disciplinary Action" against her.

32.   On December 7, 2009, Defendant issued Fuller a second "Notice of Disciplinary Action - Final," claiming that Fuller was not adequately performing her job duties.

---

[1] As suggested by her physician due to Fuller's photosensitivity to fluorescent lighting, which can exacerbate or even cause a lupus "flare," Plaintiff wore a hat while working in the office. Due to the pain and difficulties Fuller had standing and walking at times due to her SLE, as well as Defendant's failure to accommodate her with a handicapped parking space, Fuller had to use a walking cane.

5

33.   On April 27, 2010, Defendant terminated Fuller's employment without severance or recourse.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE
## FLORIDA CIVIL RIGHTS ACT (§ 760.10(1)(a), Florida Statutes)

34.   Fuller hereby incorporates and realleges paragraphs 1 through 33, as if fully restated herein.

35.   At all times material, Fuller was a handicapped person, as that term is defined in the FCRA, in that she suffered from a serious medical condition, SLE and related conditions, that from time to time substantially limited her in one or more of her major life activities of working, walking, caring for herself, lifting, carrying and doing physical work in general.

36.   At all times material, LPS perceived or regarded Fuller as a handicapped person within the meaning of the FCRA, in that Defendant believed that Fuller was substantially limited in one or more of her major life functions and treated Fuller as unfit or unable to perform some of her job duties, including visiting the offices of LPS' clients, as a result of her disability.

37.   Fuller was able to perform all of her job duties so long as she was given the reasonable accommodations of, *inter alia*, permanent WAH status, permission to work at home "as needed," a flexible work schedule, the flexible use of leave time, filters on the fluorescent lighting in her work area, and an assigned handicapped parking space.

6

38.   Fuller had no difficulty in satisfactorily performing her job duties for almost ten years until Defendant began discriminating against her by removing her accommodation of WAH status.

39.   LPS intentionally discriminated against Fuller based on her handicap, or its perception of Fuller's handicap, in that Defendant refused to provide Fuller with reasonable accommodations for her handicap.

40.   LPS intentionally discriminated against Fuller based on her handicap, or its perception of Fuller's handicap, in that Defendant terminated Fuller's employment due to her handicap.

41.   As a direct and proximate result of LPS' violation of the FCRA, Fuller has suffered and will continue to suffer compensable damage, including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, inconvenience, and other non-pecuniary losses unless and until this Court grants relief.

42.   Defendants' actions alleged herein were knowing, intentional, willful and malicious, and in willful and reckless disregard of Fuller's rights under the FCRA.

43.   All conditions precedent to Fuller's bringing this action have been satisfied, including exhaustion of administrative remedies.

WHEREFORE, Fuller prays that this Court:

(a)   enter judgment against LPS and for Fuller;

(b)   award Fuller actual damages for loss of wages and benefits caused Fuller by LPS' violations of law enumerated herein;

7

(c)     award Fuller compensatory damages;

(d)     award Fuller punitive damages;

(e)     award Fuller interest;

(f)     award Fuller all reasonable attorneys' fees and costs incurred in this action as provided in the FCRA; and

(g)     grant Fuller such other and further relief as may be equitable and just.

## COUNT II

### RETALIATION UNDER THE
### FLORIDA CIVIL RIGHTS ACT (§ 760.10(7), Florida Statutes)

44.     Fuller hereby incorporates and realleges paragraphs 1 through 33, as if fully restated herein.

45.     Fuller complained of actions by LPS made unlawful by the FCRA by directly complaining to LPS' representatives that LPS was discriminating against her by failing to provide reasonable accommodations and taking other adverse employment actions against her.

46.     Fuller also complained of actions by LPS made unlawful by the FCRA by and through her designated representatives, who sent a letter to LPS on October 8, 2010, placing it LPS on notice that it was violating Fuller's rights under the FCRA.

47.     LPS intentionally retaliated against Fuller by harassing her and discharging her for complaining of actions by LPS made unlawful under the FCRA.

48.     As a direct and proximate result of LPS' violation of the FCRA, Fuller has suffered and will continue to suffer compensable damage, including lost wages and benefits,

8

severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, inconvenience, and other non-pecuniary losses unless and until this Court grants relief.

49.    Defendants' actions alleged herein were knowing, intentional, willful and malicious, and in willful and reckless disregard of Fuller's rights under the FCRA.

50.    All conditions precedent to Fuller's bringing this action have been satisfied, including exhaustion of administrative remedies.

**WHEREFORE**, Fuller prays that the Court:

(a)    enter judgment against LPS and for Fuller;

(b)    award Fuller actual damages for loss of wages and benefits caused Fuller by LPS' violations of law enumerated herein;

(c)    award Fuller compensatory damages;

(d)    award Fuller punitive damages;

(e)    award Fuller interest;

(f)    award Fuller all reasonable attorneys' fees and costs incurred in this action as provided in the FCRA; and

(g)    grant Fuller such other and further relief as may be equitable and just.

9

## JURY DEMAND

Fuller demands trial by jury on all issues so triable.

Dated December 14, 2010

Respectfully submitted,

DELEGAL LAW OFFICES, P.A.

T.A. "Tad" Delegal, III
Fla. Bar No.: 0892701
Wendy E. Byndloss
Fla. Bar No.: 0048718
424 East Monroe Street
Jacksonville, FL 32202
Telephone: (904) 633-5000
Facsimile: (904) 358-2850
Attorneys for Plaintiff

10